Opinion by Judge HUG; Partial Concurrence and Partial Dissent by Judge BYBEE.
OPINION
HUG, Circuit Judge:
This case concerns the actions of Richard Glover, the Public Administrator of Lyon County, Nevada, after the death of Joe Mathis. Before us is an interlocutory appeal based only on the allegations in the complaint denying qualified immunity for Glover’s actions in entering Joe Mathis’s home without a warrant and failing to give notice to his sons before doing so. The complaint makes the following allegations. On May 29, 2008, the deputy sheriff entered Joe Mathis’s home on a welfare check and found him dead. He sealed the residence with the property inside. He then notified James Mathis, one of Joe Mathis’s three sons. One of the sons, Anthony Mathis, notified the deputy that he would be coming to Smith Valley, where his father’s home is located, on the next available flight and would be arriving on June 1st.
On the evening of May 30th, the deputy contacted Glover in his capacity as Public Administrator and advised him of the death of Joe Mathis. He informed him of the identity of the three sons and that Anthony Mathis would be arriving on the following day, June 1st, to take care of his father’s property and funeral. On May 31st, Glover entered the residence and carried away personal property, some of which he stored and some of which he sold.
The Mathis sons alleged that Glover and Lyon County violated their rights under the Fourth and Fourteenth Amendments of the United States Constitution, under the Nevada Constitution and for violations of Nevada state law. Glover and Lyon County moved for summary judgment on the pleadings for the Fourth Amendment allegations. Glover’s motion was on the grounds that the complaint revealed that he was entitled to qualified immunity. The district court granted the motion stating:
Glover is entitled to qualified immunity for the Fourth Amendment claim’s relating to his initial entry on the property and securing the property of the estate. However, Glover is not entitled to qualified immunity for claims that he misappropriated property for his own benefit and failed to account for or inventory the property to enable his conversion of the property.
Only the denial of qualified immunity is subject to interlocutory review, not the granting of qualified immunity.[1] Glover maintains we should review the denial of qualified immunity based upon the last sentence in the district court’s ruling. That sentence is best understood as relating to the allegations of the conversion of property in violation of state law. That interpretation is confirmed by the statement in the Mathis brief that they only *879 base the Fourth Amendment violations upon the initial entry. Thus there is no denial of qualified immunity on the violation of Fourth Amendment rights before us. Glover also is not entitled to qualified immunity on Mathis’ claim of a procedural due process violation under the Fourteenth Amendment. The right to notice and hearing prior to a public official’s administrative taking of property is clearly established. See, e.g., Fuentes v. Shevin, 407 U.S. 67, 82, 97, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (a later hearing does not remedy the prior deprivation in a replevin case); United States v. James Daniel Good Real Property, 510 U.S. 43, 53, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (“the right to prior notice and a hearing is central to the Constitution’s command of due process” absent extraordinary circumstances).
There was no extraordinary circumstance here and the failure to give notice and an opportunity to respond before Glover took the items from the house violated due process. Glover was not entitled to qualified immunity because the law was clearly settled.[2]
AFFIRMED.

. The granting of qualified immunity is reviewed only as a part of an appeal of a final judgment.

. The dissent would reach the peculiar result of granting qualified immunity to Glover on the due process issue. He dashed into the decedent’s home just before one of the decedent’s three sons was to arrive to take care of the property, which he well knew. Glover then removed the property and converted it to his own use, selling some of it. The legitimate purpose of "securing” the property does not necessitate the "removal” of the property. It was quite secure in the house. Had notice been given to the sons, and an opportunity to be heard, it is very doubtful that Glover could have removed the property and carried out his plan. The purpose of Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), would have been well served by the notice and opportunity to respond.